518 S.E.2d 663

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Dewaine C. KING, Defendant Below, Appellant.**

No. 25813.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1999.

Decided July 12, 1999.

Darrell V. McGraw, Jr., Esq., Attorney General, Allen H. Loughry, II, Esq., Assistant Attorney General, Charleston, West Virginia, Attorney for the Appellee.

Gregory L. Ayers, Esq., Assistant Public Defender, Charleston, West Virginia, Attorney for the Appellant.

MAYNARD, Justice:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on January 22, 1998. Pursuant to that order, the circuit court sentenced the appellant, Dewaine C. King, to life without mercy for kidnapping and a term of 84 years for aggravated robbery. The sentences are to be served concurrently in the Mount Olive Correctional Complex. In this appeal, the appellant contends that the circuit court erred by not holding a hearing to consider his Rule 35 motion to reduce his sentences. He further maintains that the circuit court was without authority to impose a sentence of life without mercy for his kidnapping conviction because the victim was not harmed. Finally, he asserts that his sentences are disproportionate to the crimes committed in violation of the Eighth Amendment of the United States Constitution and Article III, Section 5 of the West Virginia Constitution.

This Court has before it the petition for appeal, all matters of record, and the briefs and argument of counsel. For the reasons set forth below, the appellant's sentences are affirmed.

## I.

Around midnight, on April 30, 1997, the appellant broke into a trailer in St. Albans, West Virginia, by climbing through a screened window. Inside the trailer, he obtained a knife and woke 82-year-old Chestina Evans, who was asleep in her bedroom. The appellant asked Ms. Evans if she had a gun and she said no. The appellant told Ms. Evans that he was going to search the trailer, and if he found a gun, he would kill her. Ms. Evans then admitted that she had a gun and retrieved it from her dresser drawer. The appellant loaded the gun and asked Ms. Evans if she had any money. She gave him a few dollars that she had in her purse. The appellant then said that he wanted to leave town. However, Ms. Evans did not have a car so the appellant instructed her to call her daughter to come over to the trailer.

Ms. Evans phoned her daughter, Barbara Anderson, and told her to come to her home right away with her husband, Orville. When Mr. and Mrs. Anderson arrived, they found Ms. Evans with the appellant who was holding a gun and a knife. The appellant told the Andersons that he was not going to hurt them. He just wanted their car. Mr. Anderson offered the keys to the car, but the appellant said that he wanted Mr. Anderson to drive him to Clarksburg. The appellant told Mr. Anderson that he would not hurt him, and he could stop and call his wife along the way to let her know he was okay.

As Mr. Anderson and the appellant traveled north on Interstate 79, Ms. Anderson and Ms. Evans alerted the police. During the trip, Mr. Anderson called his wife three times to let her know he was okay. According to Mr. Anderson, the appellant played with the gun and kept talking about killing police officers during the entire trip. He fired at least one shot out the car window. At one point, he became angry and wanted to shoot a truck driver who passed them and splashed rain on the windshield.

The appellant and Mr. Anderson were finally stopped at a roadblock in Harrison County. The appellant refused to surrender to the police and was only captured after Mr. Anderson knocked the gun from his hands to keep him from shooting one of the police officers. Although the gun discharged as Mr. Anderson knocked it from the appellant's hands, no one was injured.

On January 21, 1997, pursuant to a plea agreement, the appellant pled guilty to kidnapping and aggravated robbery. The State

agreed to stand silent as to sentencing on the kidnapping charge, but recommended a determinate term of 84 years for the aggravated robbery charge. The State further agreed to recommend that the two sentences run concurrently and to not seek to invoke the Recidivist Statute, W.Va.Code § 61–11–18 (1994).[1] On April 17, 1997, the circuit court sentenced the appellant to life without mercy for the kidnapping conviction and a concurrent term of 84 years for the aggravated robbery conviction. Subsequently, the circuit court denied the appellant's motion to reduce his sentences. This appeal followed.

## II.

■ As his first assignment of error, the appellant contends that the circuit court erred by denying a hearing on his Motion to Reduce Sentences filed pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure.[2] The appellant claims that by not holding a hearing, the circuit court failed to develop a record to provide the factual basis for the sentence. In *State v. Head*, 198 W.Va. 298, 301, 480 S.E.2d 507, 510 (1996), we explained that "[a] motion made under Rule 35 (1996) of the West Virginia Rules of Criminal Procedure is directed to the sound discretion of the circuit court and, generally, is not reviewable absent an abuse of discretion."

Having examined the record, we do not find that the circuit court abused its discretion by not holding a hearing on the appellant's Rule 35 motion. The record establishes that the circuit court held lengthy hearings when the appellant pled guilty and when he was sentenced. Thus, we find no merit to the appellant's contention that the circuit court was required to hold another hearing to consider his motion for a reduction of sentences.

■ Next, the appellant contends that the circuit court was without authority to impose a sentence of life without mercy for his kidnapping conviction because the victim was returned without bodily harm. Citing *State v. Farmer*, 193 W.Va. 84, 454 S.E.2d 378 (1994), the appellant asserts that this Court has acknowledged that bodily harm is a prerequisite to a kidnapping sentence of life without mercy. According to the appellant, when the trial court finds that no bodily harm was inflicted upon the victim, the sentence imposed must be for a term of years.

In response, the State claims that the appellant has erroneously presumed that the victim was "returned." According to the State, whether the victim was harmed is irrelevant because the victim's safety did not result from a volitional act on the part of the appellant. On the contrary, the victim's release resulted from his own quick action of knocking the gun from the appellant's hand at the roadblock. Essentially, the State contends that the threshold determination with regard to whether a defendant should receive a sentence for a term of years for kidnapping, as opposed to a life sentence, is whether the victim was "returned" as set forth in W.Va.Code § 61–2–14a.[3] We find this argument persuasive and we agree.

---

1. The appellant had two prior convictions: entering without breaking and daytime burglary.

2. Rule 35(b) of the West Virginia Rules of Criminal Procedure provides, in pertinent part: "A motion to reduce a sentence may be made ... within 120 days after the sentence is imposed[.]"

3. W.Va.Code § 61–2–14a (1965) provides:
   If any person, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this State or within this State, or otherwise kidnap any other person, for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the

intent of shielding or protecting himself or others from bodily harm or of evading capture or arrest after he or they have committed a crime, he shall be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary for life, and he, notwithstanding the provisions of article twelve, chapter sixty-two of this Code, shall not be eligible for parole: provided, That the jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole in accordance with the provisions of said article twelve: Provided, however, That if the accused pleads guilty, the court may, in its discretion, provide that such person shall be eligible for parole in accordance with the provisions of said article twelve, and, if the court so provides, such person shall be eligible for parole

Initially, we must state that the appellant's contention that the absence of bodily harm is one of the prerequisites for the imposition of a sentence for a term of years under W.Va.Code § 61–2–14a is correct. That requirement was clearly established in *Farmer*. *Farmer* involved a defendant who went to a Hardee's restaurant where his estranged wife worked and demanded, at gunpoint, that she and a co-worker, get into the co-worker's car with him. After driving less than a block, the defendant allowed the co-worker to exit the vehicle. The defendant then drove his wife to a remote cemetery where he threatened to kill her and himself. Eventually, the defendant calmed down and allowed his wife to leave. Thereafter, the defendant was arrested and convicted of kidnapping and joyriding. He received concurrent terms of six months for joyriding and 90 years for kidnapping.

In his appeal, Farmer asserted that under the kidnapping statute, W.Va.Code § 61–2–14(a), the jury was required to make factual findings regarding the existence of bodily harm and whether ransom, money, or any other concession was paid or yielded before the trial judge could impose a sentence for a term of years not less than twenty or a sentence for a term of years not less than ten. In other words, Farmer maintained that his constitutional rights of due process and trial by jury[4] were violated because the jury was not allowed to make these factual findings. After reviewing W.Va.Code § 61–2–14a, this Court found that the statute simply provides the standards a trial judge may use when determining which sentence to impose. Thus, in Syllabus Point 1 of *Farmer*, we held:

> Pursuant to West Virginia's kidnapping statute set forth in *W.Va.Code*, 61–2–14a

in accordance with the provisions of said article twelve in the same manner and with like effect as if such person had been found guilty by the verdict of a jury and the jury had recommended mercy: Provided further, That in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him, but after ransom, money or other thing, or any concession or advantage of any sort has been paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than

[1965], a trial judge, for purposes of imposing a sentence on a defendant for a term of years not less than twenty or a sentence for a term of years not less than ten, has the discretion to make findings as to whether a defendant inflicted bodily harm on a victim and as to whether ransom, money, or any other concession has been paid or yielded for the return of the victim. Because the findings by the trial judge are made solely for the purpose of determining the sentence to be imposed on a defendant and are not elements of the crime of kidnapping, *West Virginia Constitution* art. III, §§ 10 and 14, relating to a defendant's due process rights and right to a trial by jury, are not violated.

The meaning of "returned" as set forth in the statute was not an issue in *Farmer* because the defendant voluntarily released both of his victims. In this case, however, the appellant did not voluntarily permit Mr. Anderson to leave his presence. Instead, Mr. Anderson was freed only after armed police officers stopped him and the appellant at a roadblock. In fact, as the State points out, Mr. Anderson actually helped the police capture the appellant. The record indicates that the appellant had a gun pointed at a police officer once the vehicle was stopped at the roadblock and it was only when Mr. Anderson heroically knocked the gun from the appellant's hands that the police were able to apprehend him. Although the victim miraculously was not harmed, he was certainly in real peril and was in the line of police fire. Given these facts, we must take a second look at W.Va.Code § 61–2–14a to determine the meaning of the phrase "return or is permitted to return" as set forth therein.

twenty: And provided further, That in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him, but without ransom, money or other thing, or any concession or advantage of any sort having been paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than ten.

4. *See* W.Va. Const., art. III, §§ 10, 14.

■ In interpreting any statute, our principles of statutory construction require us to give effect to the spirit, purpose, and intent of the Legislature. *Wooddell v. Dailey,* 160 W.Va. 65, 68, 230 S.E.2d 466, 469 (1976). In that regard, "each word of a statute should be given some effect and [the] statute must be construed in accordance with the import of its language." *Id.* (citations omitted). "To determine the true intent of the legislature, courts are to examine the statute in its entirety and not select 'any single part, provision, section, sentence, phrase or word.' Syllabus Point 3, in part, *Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575 (1990)." Syllabus Point 2, in part, *Mills v. Van Kirk,* 192 W.Va. 695, 453 S.E.2d 678 (1994).

■ In *Farmer,* recognizing that W.Va. Code § 61–2–14a is not a model of clarity, we provided the following simplified version of the statute for discussion purposes:

[I]f any person by force, threat, etc., takes, etc., or kidnaps any other person for the purpose of receiving ransom, money, or any other concession, he shall be guilty of a felony and imprisoned for life, without eligibility of parole, unless the jury recommends mercy. Additionally, *W.Va.Code,* 61–2–14a [1965] provides that if a person is returned without bodily harm, but after ransom, money or any other concession has been paid or yielded, he shall be imprisoned for a term of years of not less than twenty. Furthermore, *W.Va.Code,* 61–2–14a [1965] states that if the person is returned without bodily harm and without ransom, money or any other concession being paid or yielded, he shall be imprisoned for a term of years not less than ten.

193 W.Va. at 87, 454 S.E.2d at 381. Utilizing this simplified version of the statute again, our analysis requires us to observe that the provisions of the statute relating to the imposition of a sentence for a term of years begins with the phrase "if a person is returned or is permitted to be returned." Obviously, the Legislature intended the "return" of the victim to be one of the prerequisites for permitting a sentence for a term of years to be imposed on a defendant convicted of kidnapping. If that were not the case,

that phrase could have easily been omitted from this section of the statute. Accordingly, we hold that in order for a defendant to be sentenced for a kidnapping conviction to a term of years not less than twenty or a term or years not less than ten as provided in W.Va.Code § 61–2–14a, the circuit court must make a finding that the victim was "returned or permitted to be returned" in addition to making findings as to whether the defendant inflicted bodily harm on the victim and whether ransom, money, or any other concession was made.

■ We further hold that a kidnapping victim who is rescued by the police has not been "returned or permitted to be returned" as set forth in W.Va.Code § 61–2–14a. Unquestionably, the statute was meant to provide a defendant with an incentive to discontinue criminal activities. To that end, a defendant who experiences a change of heart and voluntarily returns or allows a victim to return unharmed is to be treated differently. If a victim's release is forcible and involuntary and is brought about only by armed police rescue, it certainly cannot be said that the defendant relented and had a change of heart and voluntarily returned the victim. Here, the victim had to be forcibly removed from the appellant. Any other interpretation of the statute would be inconsistent with the obvious intent of the Legislature to treat those defendants who voluntarily release their victims differently. Because Mr. Anderson had to be rescued by armed police officers and was not "returned" by the appellant, we find no merit to his contention that the circuit court was without authority to impose a life without mercy sentence on him.

■ As his final assignment of error, the appellant contends that his sentences of life without mercy for kidnapping and 84 years for aggravated robbery are disproportionate to the character and degree of the offenses he committed. In Syllabus Point 8 of *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980), this Court stated that:

Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States

Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offense.'

■ This Court has set forth two tests for determining whether a sentence is so disproportionate that it violates our constitution.[5] In *State v. Cooper,* 172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983), we stated that:

The first [test] is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher,* [166] W.Va. [523], 276 S.E.2d 205 (1981):

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

■ To determine whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense as well as the information contained in the presentence investigation report. *State v. Phillips,* 199 W.Va. 507, 513, 485 S.E.2d 676, 682 (1997). In this case, the appellant broke into the home of an 82–year–old woman and threatened to kill her with both a knife and a gun. The appellant also threatened Ms. Evans's daughter and son-in-law. He then forced Ms. Evans' son-in-law, at gunpoint, to drive him to Clarksburg. During the trip, the appellant waved his gun out the car window and fired at least one shot. He also

said that he wanted to kill police officers and at one point, wanted to shoot a truck driver because he had splashed rain on the windshield. When confronted with the roadblock in Clarksburg, the appellant exposed Mr. Anderson to further danger by refusing to surrender to the police and using him as a shield. The appellant aimed his gun at the police and probably would have shot one of the officers had it not been for the heroic actions of Mr. Anderson.

The pre-sentence report indicates that the appellant has been previously convicted of daytime burglary and entering without breaking. In fact, the appellant was on parole at the time he engaged in this robbery and kidnapping. Given all these circumstances, and in particular, the gunplay and the violent nature of the crimes committed by the appellant and the fact that he was a persistent felony offender, we find that the sentences imposed on him do not shock the conscience of the Court and society. Consequently, we proceed to the objective test.

■ The first consideration of the objective test is the nature of the offense for which the appellant was convicted and the legislative purpose behind the statutory punishment. Both aggravated robbery and kidnapping have been recognized as crimes with a high potential for violence and injury to the victim involved. *See Phillips,* 199 W.Va. at 514, 485 S.E.2d at 683. As a result, the Legislature has provided the circuit courts with broad discretion in sentencing defendants convicted of these crimes. *Id.*

■ Looking at similar cases in other jurisdictions, we find that the appellant's sentences are comparable. For instance, in *State v. Alsup,* 239 Kan. 673, 722 P.2d 1100 (1986), *overruled on other grounds, State v. McDaniel,* 255 Kan. 756, 877 P.2d 961 (1994), the Supreme Court of Kansas upheld a defendant's sentences of five years to life for aggravated robbery and ten years to life for

5. We note that "[s]entences imposed by the trial court, if within statutory limits and if not based on some impermissible factor, are not subject to appellate review." Syllabus Point 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982). However, sentences imposed under stat- utes with no upper limits may be challenged on the grounds that they violate the principle of proportionality contained in Article III, Section 5 of the West Virginia Constitution. *State v. Rogers,* 167 W.Va. 358, 360, 280 S.E.2d 82, 84 (1981).

kidnapping. The evidence showed that the defendant entered a drugstore and grabbed a 14–year–old female employee. He pointed a sawed-off shotgun at her abdomen and demanded that the store owner give him some drugs. After he obtained the drugs, the defendant left with the girl threatening to kill her if the store owner called the police. The court found that the defendant's sentences were within the statutory limits and therefore, not excessive.

In *Robinson v. State*, 743 P.2d 1088 (Okla. Crim.App.1987), the defendant was convicted of robbery with a dangerous weapon and kidnapping. The jury imposed two consecutive terms of 100 years. The evidence at trial showed that the victim had pulled his car off an interstate highway to check an engine malfunction when he was approached by the defendant and an accomplice who demanded a ride. The victim complied out of fear. As he was driving, the defendant's accomplice grabbed the steering wheel and pulled the vehicle to the side of the road while the defendant put a knife to the victim's throat. The defendant ordered the victim to surrender his valuables. The defendant and the accomplice were later arrested when they accidentally slid the car into a muddy ditch. The Court of Criminal Appeals of Oklahoma rejected the defendant's contention that his sentences were excessive, finding that the sentences did not shock the conscience of the court. The court further noted that the defendant had four prior felony convictions.

Similarly, in *State v. Whitaker*, 260 Kan. 85, 917 P.2d 859 (1996), the Supreme Court of Kansas upheld a defendant's sentence of 20 years to life for kidnapping, aggravated robbery, and aggravated battery against a police officer. The defendant and a companion kidnapped and robbed a bailbondsman and another man. The victims were able to

escape when the defendant stopped at a convenience store for gas. While attempting to apprehend the defendant and his companion, a security guard was shot in the arm. *See State v. Whitaker (Whitaker I)*, 255 Kan. 118, 872 P.2d 278 (1994). In upholding the defendant's sentence, the court noted that the defendant had failed to accept responsibility for his actions and that his false testimony during trial adversely affected the prospects of his rehabilitation.

In considering West Virginia case law, we found only two cases involving proportionality challenges where the defendant was convicted of both aggravated robbery and kidnapping.[6] In *State v. Black*, 175 W.Va. 770, 338 S.E.2d 370 (1985), the defendant received a 20–year sentence for kidnapping and a 15–year sentence for aggravated robbery. The evidence established that the defendant and an accomplice entered the Holiday Inn in Huntington, West Virginia, on May 23, 1980, and demanded money from the front desk. The defendant suggested that he had a pistol in his pocket. After obtaining money from the cash register and the safe, the defendant instructed two hotel employees to get in his car. The two employees were later released in a park. Shortly thereafter, the defendant and his accomplice were captured and arrested. In upholding the sentences, we noted that the defendant had a criminal record which included fifty-two misdemeanor charges, twelve of which resulted in convictions. The defendant had also been charged with five felonies and one was still pending at the time he was sentenced. Finally, we observed that the defendant had a history of drug and alcohol abuse.

More recently, we upheld a 140–year sentence for two counts of aggravated robbery and one count of kidnapping in *Phillips, supra*. The defendant was found guilty of rob-

---

6. We have, however, reviewed several proportionality challenges of sentences for aggravated robbery. *See State v. Ross*, 184 W.Va. 579, 402 S.E.2d 248 (1990) (upholding 100–year sentence for attempted aggravated robbery); *State v. Spence*, 182 W.Va. 472, 388 S.E.2d 498 (1989) (finding 60–year sentence for armed robbery of a convenience store was not disproportionate); *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988) (affirming life sentence for aggravated

robbery of a gas station where defendant's prior criminal record included a conviction for grand larceny).

Similarly, we have also addressed proportionality challenges to sentences arising from kidnapping convictions. *See State v. Farmer*, 193 W.Va. 84, 454 S.E.2d 378 (1994) (90–year sentence for kidnapping not based on some impermissible factor was not subject to review).

bing two fast-food restaurants on the same night. The defendant threatened the employees at both restaurants with an air pistol which resembled a real gun. During the second robbery, the defendant grabbed an eighteen-year-old female employee and took her with him. In his car, the defendant instructed his hostage to give him instructions to the nearest interstate highway. As the defendant traveled north on Interstate 77 with his hostage, he was spotted by a state trooper. A high-speed chase ensued and the defendant was eventually captured. In upholding the defendant's sentence, we noted that the trial court properly considered the violent and dangerous nature of the crimes committed by the appellant. The trial court further considered the information in the pre-sentencing report which indicated that the defendant had a juvenile larceny charge and a history of substance abuse. The defendant had also been dishonorably discharged from the Navy. Based upon the totality of the circumstances, we found that the sentence imposed was not disproportionate to the character and degree of the offenses the defendant committed.

Given the offenses involved in the cases discussed above, and in light of the respective sentences imposed, we believe that the appellant's sentences in the case *sub judice* are constitutionally proportionate to the character and degree of the offenses for which he was convicted. The appellant committed violent crimes and endangered the lives of several people. While the appellant claims that he kept telling his victims that he would not hurt them, the fact remains that he continued to threaten Ms. Evans with a knife and gun and forced Mr. Anderson to drive him to Clarksburg at gunpoint. Moreover, when he was confronted by the police, the appellant refused to release Mr. Anderson and exhibited clear intention to shoot a police officer. Thus, based on the totality of the circumstances surrounding the crime as well as the appellant's prior criminal record, we find that the appellant's sentences are appropriate and not constitutionally disproportionate.

In conclusion, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on January 22, 1998, is affirmed

Affirmed.